

**FILED**
APR 23 2008

# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# CENTRAL DIVISION

*********************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 07-30102(01) |
| Plaintiff, | * | AMENDED |
| | * | REPORT AND RECOMMENDATIONS |
| -vs- | * | FOR DISPOSITION OF MOTION |
| | * | TO SUPPRESS |
| CLAYTON HIGH WOLF, | * | |
| Defendant. | * | |

*********************************************************************************

Defendant, Clayton High Wolf, has filed a Motion to Suppress and supporting Memorandum, Docket Nos. 74, 75. In his Motion, Defendant seeks to suppress all evidence that was obtained following, and as a result of, his arrest on April 23, 2007 on the ground and for the reason that such evidence was obtained by non-commissioned tribal officers who stopped and arrested him without probable cause and any legal authority to act.

This Court held several evidentiary hearings to address Defendant's claims, Docket Nos. 44, 81, 83, 87. Because Defendant's Motion is a dispositive one, the Court is only authorized to determine the same on a report and recommendation basis. See 28 U.S.C. §636(b)(1). After careful review of the evidence, testimony and legal authorities presented, the Court does now make and propose the following report and recommendation for disposition of the Motion.

I.

Defendant was arrested on April 23, 2007 by a police officer for the Rosebud Sioux Tribe (RST). The arrest eventually led to the marijuana offense Defendant is charged with now in federal court.

Nearly two decades ago, RST established requirements for becoming a commissioned police officer to perform law enforcement functions within the exterior boundaries of the Rosebud Indian Reservation. See RST Ordinance No. 91-05, a copy of which is attached hereto. Many tribal police officers, however, did not have RST commissions in 2007 and early January, 2008, including at least one of the officers who was involved in Defendant's April 23 arrest and the seizure of items from him that day. Defendant maintains that any non-commissioned tribal officer was without legal authority to arrest, detain, search, seize evidence or engage in any other law enforcement activities set forth in the tribal commission ordinance. Citing Weeks v. United States, 232 U.S. 383 (1914) and United States v. Leon, 468 U.S. 897 (1984), Defendant contends that he was illegally stopped and arrested on April 23 and that as such, any fruits derived therefrom were "tainted" and must be excluded under the Fourth Amendment.

II.

Technically, the Fourth Amendment does not apply to tribal officers who stop and arrest individuals and search for evidence within Indian territory. United States v. Schmidt, 403 F.3d 1009, 1013 (8th Cir. 2005); United States v. Clifford, 664 F.2d 1090, 1091, n.3 (8th Cir. 1981). Nonetheless, the Indian Civil Rights Act ("ICRA"), imposes the same standards on tribal officers as the Fourth Amendment. Id; United States v. Becerra-Garcia, 397 F.3d

2

1167, 1171 (9th Cir. 2005), cert. denied, 547 U.S. 1005 (2006); see also United States v. Lester, 647 F.2d 869, 872 (8th Cir. 1981); People v. Ramirez, 148 Cal. App. 4th 1464, 1469-76, 56 Cal. Rptr.3d 631, 635-41 (Cal. Ct. App. 2007).[1] This Court therefore will analyze the reasonableness of Defendant's stop and arrest and the search and seizure of evidence obtained therefrom under Fourth Amendment precedent already developed which produces the same result as an analysis under the ICRA. Becerra-Garcia, 397 F.3d at 1171.

A.

At the outset, it must be determined whether citizen arrest law, or the Fourth Amendment, controls this controversy. If, as Defendant maintains, one or both of the officers lacked the authority to stop and arrest him on April 23, were they nonetheless authorized to do so as private citizens? This Court thinks not.

The Fourth Amendment applies to a search or seizure conducted by a private citizen only if that individual is "acting as an agent of the Government or with the participation or knowledge of any governmental official." United States v. Jacobsen, 466 U.S. 109, 113 (1984) (internal quotations omitted); see also Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971) (explaining that a private search may be converted into governmental action only if the private actor is "regarded as having acted as an 'instrument' or agent of the state"). Courts look to several factors in determining whether a private citizen was acting as an agent of the government. "Chief among these are whether the government had knowledge of and

---

[1] The ICRA states in pertinent part as follows: "No Indian tribe in exercising powers of self-government shall . . . violate the right of the people to be secure in their persons, houses, papers and effects against unreasonable search and seizures." 25 U.S.C. §1302(2).

3

acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement agents or instead acted to further his own purposes; and whether the citizen acted at the government's request." United States v. Smith, 383 F.3d 700, 705 (8th Cir. 2004) (citing United States v. Malborough, 922 F.2d 458, 462 (8th Cir. 1990)), cert. denied, 547 U.S. 1022 (2006); see also United States v. Miller, 152 F.3d 813, 815-16 (8th Cir. 1998).

Here, the government entity – the RST Police Department – knew of and was privy to the activities of the responding officers. The officers stopped and arrested Defendant to enforce RST criminal laws, not to effect some personal benefit or end. United States v. Ziegler, 136 F.Supp.2d 981, 991 (D.S.D. 2001). There can be little doubt that the officers acted as government agents for purposes of the Fourth Amendment. Becerra-Garcia, 397 F.3d at 1172; State v. Benefiel, 131 Idaho 226, 228, 953 P.2d 976, 978, cert. denied, 525 U.S. 818 (1998); see also United States v. Roy, 408 F.3d 484, 490-91 (8th Cir. 2005). This being the case, Fourth Amendment law applies and will be used to resolve Defendant's suppression Motion.

B.

The evidence clearly indicates that the officer who stopped (and had probable cause to arrest) Defendant on April 23 was commissioned by RST (and had a card issued by the Tribe evidencing this in his possession) at the time.[2] Accordingly, Defendant's claim, to the

---

[2] Sergeant Calvin Waln, Jr., a K-9 officer, had been issued a commission card, for a two-year term, in April, 2006. Mot. Hrg. Tr. (Apr. 8, 2008) 295, 301, 424-25; Mot. Hrg. Ex. (Mar. 27, 2008) 8.

4

extent that it seeks relief based on ultra vires conduct in connection with his arrest, fails for this reason alone. See Ziegler, 136 F.Supp.2d at 986-88, 990-91.

C.

Regardless, whether tribal officers, as a matter of RST law, were authorized to stop and arrest Defendant and search and seize evidence stemming from the same is an issue the Court need not decide. Indeed, even if one or more of the officers who participated in the apprehension of Defendant and the taking of evidence were not lawfully commissioned RST officers, this still does not mean that Defendant's suppression Motion must be granted.

(i)

As a general rule, evidence will only be excluded in federal court when it violates federal protections, such as the Fourth Amendment, and not in cases where the evidence is tainted by reason of a tribal law violation. United States v. Hornbeck, 118 F.3d 615, 617 (8th Cir. 1997); Becerra-Garcia, 397 F.3d at 1173; see also United States v Male Juvenile, 280 F.3d 1008, 1023 (9th Cir. 2002) ("[W]e reject the contention that tribal law should govern the admissibility of statements in federal court. Federal law governs federal proceedings."). The question of whether evidence obtained by tribal officers, allegedly as part of an unreasonable search and seizure, may be used against a defendant in a federal trial "is to be judged as if the search and seizure had been made by federal officers." Hornbeck, 118 F.3d at 617 (quoting Preston v. United States, 376 U.S. 364, 366 (1964)); see also United States v. Bell, 54 F.3d 502, 504 (8th Cir. 1995) (holding that "the district court should not have looked to [state] law in deciding the lawfulness of [the defendant's] arrest" and directing the court, on remand, to "evaluate the case as if federal officers had stopped [the defendant]").

5

Where the evidence seized by tribal officers is in conformity with the Fourth Amendment, such evidence will not be suppressed in a federal prosecution even if tribal law has been violated. Hornbeck, 118 F.3d at 617; Becerra-Garcia, 397 F.3d at 1173-74; see also United States v. Timley, 443 F.3d 615, 624 (8th Cir.) ("Evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed simply because the underlying search warrant failed to conform to state law."), cert. denied, 127 S.Ct. 299 (2006); Bell, 54 F.3d at 504 ("A federal court generally does not look to state statutes to assess the validity of an arrest, search or seizure under the Fourth Amendment . . . . [W]e do not think Fourth Amendment analysis requires reference to an arrest's legality under state law . . . . An arrest by state officers is reasonable in the Fourth Amendment sense if it is based on probable cause . . . ."); see generally United States v. Chavez-Vernaza, 844 F.2d 1368, 1374 (9th Cir. 1987) ("evidence seized in compliance with federal law is admissible without regard to state law"); 1 W. LaFave, Search and Seizure, §1.5(b) at 167-68 n. 61 (4th ed. 2004 & 2007-08 Supp.).

(ii)

Defendant's claim is grounded solely upon alleged violations of RST law. His supporting Memorandum makes passing reference to the Fourth Amendment, but does not explain how the Amendment was implicated or, more importantly, violated by tribal officers not being commissioned at the time of his arrests. This is insufficient, as a matter of law, to establish a Fourth Amendment infraction, much less warrant relief under the Exclusionary Rule. Hornbeck, 118 F.3d at 618. Such a Rule is a "blunt instrument" and "[f]or that reason courts should be wary in extending the [ ] [R]ule in search and seizure cases to violations

which are not of constitutional magnitude." Id. at 618 (quoting United States v. Burke, 517 F.2d 377, 386 (2d Cir. 1975)). Inasmuch as Defendant has failed to allege a constitutional violation, his Motion to Suppress must be denied. Hornbeck, 118 F.3d at 618.

(iii)

Yet even assuming, arguendo, that Defendant has made a cognizable Fourth Amendment claim, he nonetheless cannot prevail on the merits of that claim and thus obtain relief.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. In Terry v. Ohio, 392 U.S. 1, 30 (1968), the Supreme Court held that a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot" even if the officer lacked probable cause. The officer though must have something more than a "inchoate and unparticularized suspicion or 'hunch.'" Id. at 27. The Fourth Amendment requires "some minimal level of objective justification" for making the stop. I.N.S. v. Delgado, 466 U.S. 210 (1984). Even so, the level of suspicion required "is considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Sokolow, 490 U.S. 1, 7 (1989).

Of course, probable cause, a standard more demanding than the level of suspicion necessary to sustain a Terry stop, see United States v. Montoya de Hernandez, 473 U.S. 531, 541 (1985), is required to justify a warrantless arrest, search and seizure, Wong Sun v. United

States, 371 U.S. 471, 479 (1963).[3] "Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible." Ornelas v. United States, 517 U.S. 690, 695 (1996). They are common sense, non-technical conceptions that deal with "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)); see also Sokolow, 490 U.S. at 7-8. These two legal principles are not "finely-tuned standards" but instead are fluid concepts that take their substantive content from the particular contexts in which they are being assessed. Gates, 462 U.S. at 232, 235. The principle components of a reasonable suspicion or probable cause determination are the events which lead up to the stop, arrest or search and whether these historical facts, when viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or probable cause. Ornelas, 517 U.S. at 696.

The issue in the case at hand is whether there was reasonable suspicion to stop Defendant and probable cause to arrest him and search and seize evidence. This Court is satisfied that there was.

The evidence of record plainly shows that given what Waln had seen and been told on April 23, there was both a legitimate basis for making a traffic stop of Defendant and

---

[3]While probable cause is required for both arrests and searches, the meaning of the term is not exactly the same. Each requires a showing of probabilities in somewhat different factual scenarios and thus one can exist without the other. In search and seizure cases, there must be substantial evidence that the items sought are connected with criminal activity and that these items will be found in the place to be searched. 2 W. LaFave, J. Israel, N. King & O. Kerr, Criminal Procedure, §3.3(a) at 106 (3d. ed. 2007). It is not necessary that a particular person be implicated in the crime under investigation. Id. at 106-07. By comparison, in arrest cases, there must be substantial evidence that a crime has been committed and that the person to be arrested committed it. Id. at 107.

8

probable cause to arrest Defendant for one or more tribal offenses. Mot. Hrg. Tr. (Jan. 2, 2008), 15-16, 23-24, 30-38, 55-57, 60, 73-74, 79, 81-82, 84-85, 94-98; Mot. Hrg. Ex. (Jan. 2, 2008) 3. There was also probable cause for the search and seizure of the marijuana Defendant had in the pocket of his sweater.[4] Mot. Hrg. Tr. 55-57, 60, 79, 81-82, 84-85, 94-98; Mot. Hrg. Ex. 3.

In view of this evidence, and the long-standing principle that Fourth Amendment reasonableness cannot be reduced to bright line rules, this Court is unable to conclude that the stop, arrest, searches and seizures conducted by tribal officers, whether commissioned at the time or not, were unreasonable. See Becerra-Garcia, 397 F.3d at 1175. In doing so, the Court declines to embrace Defendant's request for a sweeping exclusionary rule based on the legal status of officers who readily believed that they had law enforcement authority and acted pursuant to it under color of tribal law. See id.; see also Hornbeck, 118 F.3d at 618. Stated another way, Defendant's claim that one or more of the officers lacked the authority necessary to function as tribal policemen does not transform their otherwise reasonable and constitutionally permissible acts into unreasonable ones. See Becerra-Garcia, 397 F.3d at 1175. Accordingly, the evidence gathered from and as a result of Defendant's April 23 arrest is not subject to suppression under the Fourth Amendment.

III.

Based on the foregoing discussion, it is hereby

---

[4] The same is true of the pictures taken of the evidence seized. Because the search and seizure conducted was in accord with Fourth Amendment strictures, the photographs are not "poisonous fruit" that must be suppressed.

9

RECOMMENDED that Defendant's Motion to Suppress, Docket No. 74, be denied.

Dated this 23rd day of April, 2008, nunc pro tunc, April 22, 2008, at Pierre, South Dakota.

**BY THE COURT:**

_____
**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
            Deputy
(SEAL)

**NOTICE**

Failure to file written objections to the within and foregoing Report and Recommendations for Disposition within ten (10) days from the date of service shall bar an aggrieved party from attacking such Report and Recommendations before the assigned United States District Judge. See 28 U.S.C. § 636(b)(1).

10