UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 07-30102-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ADOPTING THE |
| vs. | ) | MAGISTRATE JUDGE'S |
| | ) | REPORT AND |
| CLAYTON HIGH WOLF, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

Defendant, Clayton High Wolf, is charged with one count of possession with intent to distribute a controlled substance, namely marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  He moves to suppress evidence seized on April 23, 2007.  He also moves to suppress statements made on April 23, 2007; April 25, 2007; April 26, 2007; and November 17, 2007.

The court referred the motion to suppress to Magistrate Judge Mark A. Moreno pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Moreno recommends that this court deny High Wolf's motion in all respects.  High Wolf objects to the report and recommendation (R&R, Dockets 99-103) of Magistrate Judge Moreno.  The government has not objected to the report and recommendation.

**STANDARD OF REVIEW**

The court must make a de novo review "of those portions of the [Magistrate's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also United States v. Lothridge, 324 F.3d 599 (8th Cir. 2003); Jones v. Pillow, 47 F.3d 251, 253 (8th Cir. 1995). 28 U.S.C. § 636(b)(1) requires that when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.; see also Fed. R. Civ. P. 72(b). After a de novo review of the magistrate judge's report and recommendation and a review of the record, the court accepts the report and recommendation of the magistrate judge as supplemented herein.

**DISCUSSION**

**I.     Vehicle Stop**

High Wolf objects to the magistrate judge's finding that Officer Calvin Waln, Jr., had reasonable suspicion to stop High Wolf's vehicle on April 23, 2007, and that the stop was not pretextual.

Magistrate Judge Moreno determined that Officer Waln properly stopped High Wolf's vehicle. Although a pretextual traffic stop violates the Fourth Amendment, see United States v. Eldridge, 984 F.2d 943, 947 (8th Cir. 1993), detention of a motorist is reasonable once probable cause exists to believe that

a traffic violation has occurred.  Whren v. United States, 517 U.S. 806, 806 (1996) (quoting Delaware v. Prouse, 440 U.S. 648, 659 (1979)).  Additionally, subjective intentions of officers play no role in ordinary, probable cause Fourth Amendment analysis.  Id.  Magistrate Judge Moreno credited Officer Waln's testimony that High Wolf made a left hand turn into a convenience store without first signaling.  R&R Tr. (Docket 101) 4.  Magistrate Judge Moreno also considered Officer Waln's testimony that he had received information from Sergeant Edwin Young, which indicated the intoxicated state of the driver in High Wolf's vehicle.  Id. at 3.  As Officer Waln testified, Sergeant Young's information drew Officer Waln's attention to the vehicle, but the basis for the stop was High Wolf's traffic violation.  Hrg. Tr. (Docket 94) 30-34.  After reviewing the facts and the law as they relate to this case, the court adopts the Report and Recommendation issued by Magistrate Judge Moreno with respect to the stop of the vehicle.

**II.   Search of High Wolf's Vehicle**

High Wolf contests the magistrate judge's finding that Officer Waln and Sergeant Long had probable cause to search the vehicle High Wolf was driving.  Specifically, High Wolf argues that Officer Waln's drug dog, Jansen, which sniffed around the exterior of High Wolf's car and positively indicated, was unreliable.

First, where High Wolf's vehicle was properly stopped for a traffic violation, the use of Officer Waln's dog to sniff around the exterior of the car for

3

contraband could occur, even in the absence of any suspicion of drug activity. Illinois v. Caballes, 543 U.S. 405, 409-10 (2005) (relying on United States v. Place, 462 U.S. 696, 707 (1983)).  The court in Caballes permitted the use of a drug dog under such circumstances because it did not "expose non-contraband items that otherwise would remain hidden from public view." Caballes, 543 U.S. at 409.  Similarly, the use of Jansen to sniff around High Wolf's vehicle did not reveal information other than the location of a substance that High Wolf lacked any right to possess.  See id. at 410.  Accordingly, Magistrate Judge Moreno properly found that the sniff did not amount to a Fourth Amendment intrusion.

If a drug dog is reliable, its positive indication alone establishes probable cause for the presence of a controlled substance.  United States v. Sundby, 186 F.3d 873, 875 (8th Cir. 1999).  An affidavit stating that the dog has been trained and certified to detect drugs sufficiently establishes a dog's reliability. Id. at 876 (citing United States v. Kennedy, 131 F.3d 1371, 1377 (10th Cir. 1997)).  In Sundby, the court found that even though no information was offered about continued training, continued certification, reliability, or error rates for the drug dog, the dog was nonetheless reliable, because the affidavit only needed to state that the dog was trained and certified to detect narcotics. Id. at 874-76.  Here, to an extent even greater than in Sundby, the government offered evidence demonstrating the reliability of Officer Waln's drug dog.  At the suppression hearing, Magistrate Judge Moreno considered evidence that on

July 14, 2006, Jansen successfully completed training and was certified for narcotics detection, as well as being re-certified on March 19-21, 2007. Hrg. Tr. 39-43. He also considered Jansen's "real life" performance data for the seven-week time period prior to the April 23, 2007, stop of High Wolf, which showed the dog's accuracy rate as exceeding 90 percent. R&R Tr. at 5. Finally, Magistrate Judge Moreno considered the disparity in Jansen's performance between the periods of July 2006 until April 2007 (54 percent accurate), and May 2007 until December 2007 (97.5 percent accurate), finding Officer Waln's explanation for the difference logical and credible. Id. Jansen was a competent, qualified, and reliable drug indicator at the time of High Wolf's stop. Thus, the court adopts Magistrate Judge Moreno's findings regarding Jansen's reliability and the search of High Wolf's vehicle.

### III.   Search of High Wolf's Person

High Wolf objects to the magistrate judge's finding that the search of his person was legal. High Wolf recognizes that without a warrant, law enforcement may conduct a limited search of an individual to ensure officer safety, but he emphasizes that the officer must have a reasonable, articulable suspicion that the person is armed and presently dangerous. High Wolf urges that Officer Waln did not report observations leading him to believe High Wolf was armed or dangerous, and that Officer Waln frisked High Wolf for no reason. High Wolf also disputes the magistrate judge's finding that the search

5

of his pocket was justified under the plain view exception to the warrant requirement.

First, the court has considered Officer Waln's testimony that when he made the stop, High Wolf was not threatening or belligerent to him, and that he did not have reason to suspect that High Wolf was carrying a weapon. Hrg. Tr. 77-78. But once Jansen positively alerted while sniffing the exterior of High Wolf's vehicle, Officer Waln had a reasonable and articulable suspicion that High Wolf was presently dangerous. See Terry v. Ohio, 392 U.S. 1, 9 (1968). In light of the correlation between suspected drug trafficking and the likelihood that High Wolf possessed a weapon, Officer Waln's search of High Wolf's person in order to ensure his safety was proper. See United States v. Johnson, 528 F.3d 575, 579 (8th Cir. 2008) (finding officer's restraint of defendant's hands reasonable given the link between his suspected drug trafficking and potential danger to the officer).

Second, Sergeant Long's seizure of the bag of marijuana in High Wolf's sweater pocket was justified under the plain view exception to the warrant requirement. See Horton v. California, 496 U.S. 128, 136-37 (1990). Under the plain view doctrine, (1) if police are lawfully in a position from which they view an object, (2) if its incriminating character is immediately apparent, and (3) if police have a lawful right of access to the object, then they may seize it without a warrant. Id. Magistrate Judge Moreno considered these three

prongs in light of Officers Waln's and Long's testimony at the suppression hearing: the officers had lawful right of access to the location because they were lawfully investigating suspected criminal activity following an alert by a drug dog; the incriminating nature of the baggie was "immediately apparent" to Sergeant Long; and the officers had lawful right of access to the bag of marijuana in High Wolf's sweater pocket.  R&R Tr. 7-8.  Accordingly, the court adopts Magistrate Judge Moreno's Report and Recommendation with respect to Officer Waln's search of High Wolf's person and Sergeant Long's seizure of the baggie containing marijuana.

## IV.    High Wolf's Statements

### A.    Fourth Amendment

High Wolf moves to suppress all of the statements he made on Fourth Amendment grounds; he argues that they are fruits of an illegal stop, illegal search, and illegal arrest under Wong Sun v. United States, 371 U.S. 471 (1963).  As discussed earlier, the court adopts Magistrate Judge Moreno's finding that the stop, search, and arrest of High Wolf was legal.  Accordingly, the statements he made subsequently are admissible.

### B.   Fifth Amendment

High Wolf also argues that he did not knowingly, intentionally, and voluntarily waive his constitutional rights before making statements to Agents Mike Walters and Cliff Martell on April 23, April 25, April 26, and November 17, 2007.

### 1.   April 23, 2007

Magistrate Judge Moreno properly found that High Wolf's statement to Agents Walters and Martell on April 23, 2007, was voluntary and thus admissible.  See United States v. Hatten, 68 F.3d 257, 262 (8th Cir. 1995). Although High Wolf was in custody when he made the statement, "a voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of Miranda warnings."  Id. (quoting Rhode Island v. Innis, 446 U.S. 291, 299 (1980).  Here, Agent Walters testified that High Wolf's statement about marijuana was made while High Wolf was waiting for a detention officer to return him to jail, and not in response to any questioning by the agents.  R&R Tr. 9.  Further, even if High Wolf's statement was made in response to officer questioning, it was nonetheless voluntary.[1]  The government presented credible testimony

---

[1] A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973).  Conversely, "[a] statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-

8

establishing the voluntariness of High Wolf's statement, and no contrary evidence suggested that the agents coerced High Wolf. Accordingly, the court finds that the agents did not compel or coerce High Wolf while he was in custody, and it adopts Magistrate Judge Moreno's finding of admissibility regarding the April 23, 2007, statement.

### 2. April 25 and April 26, 2007

Magistrate Judge Moreno properly determined that High Wolf's statements from the interview on April 26, 2007, were admissible, because High Wolf initiated further communication with the agents prior to the interview. See Edwards v. Arizona, 451 U.S. 477, 486 (1981) (finding that defendant's inculpatory statement was admissible because even though he had expressed his desire to deal with police only through counsel, he subsequently initiated further communication with police). Similar to the defendant in Edwards, High Wolf contacted and indicated his desire to speak with Agent Walters on April 25, 2007.[2] After being informed of his Miranda rights and waiving them on April 26, 2007, High Wolf reiterated his desire to speak with

---

determination." United States v. Hyles, 479 F.3d 958, 966 (8th Cir. 2007). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167 (1986). "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).

[2] Other than expressing his desire to speak with Agent Walters, High Wolf did not make inculpatory statements on April 25, 2007. Hrg. Tr. 106.

Agent Walters, as well as Agent Martell.  Magistrate Judge Moreno considered High Wolf's actions specifically in light of <u>Edwards</u> and <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1044 (1983), and thus properly found that the statements from the subsequent 45- to 50-minute interview with Agent Walters and Agent Martell admissible.

### 3.     November 17, 2007

Magistrate Judge Moreno properly found that High Wolf's statements on November 17, 2007, were admissible, because High Wolf knowingly, voluntarily, and intelligently waived his <u>Miranda</u> rights and his statements were voluntary.  See <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).  Magistrate Judge Moreno considered the fact that on November 17, 2007, the agents again informed High Wolf of his <u>Miranda</u> rights and High Wolf subsequently waived them.  R&R Tr. 11; <u>see</u> <u>Miranda</u> at 469 (finding that no effective waiver of right to counsel during interrogation can be recognized unless <u>Miranda</u> rights have previously been given).  Further, for the subsequent two hours during which he was interviewed while in custody, High Wolf never indicated that he did not want to talk to Agents Walters and Martell, that he wanted an attorney, or that he no longer wanted to answer any questions.  R&R Tr. 11.  High Wolf made inculpatory remarks about the marijuana found on his person immediately prior to his arrest on April 23, 2007, and he provided information about people in a position of authority at Pine Ridge that might be involved in drug activity.

Id. at 12. Magistrate Judge Moreno did not find anything to vitiate the voluntariness of High Wolf's statements or the validity of his Miranda waiver. Accordingly, the court adopts Magistrate Judge Moreno's Report and Recommendations concerning High Wolf's statements on November 11, 2007.

## V.   Tribal Commission Issue

In his motions to suppress, High Wolf argues that the tribal officers who conducted the stop and search of his vehicle and person did not possess valid tribal commissions as required by tribal law, and therefore any evidence obtained and statements made by High Wolf must be suppressed. First, concerning Officer Waln, High Wolf urges that no evidence in the record indicates the duration for which Officer Waln's tribal commission was issued. Second, concerning Sergeant Long, High Wolf contends that Sergeant Long's commission expired in February 2007, and thus was not valid at the time of High Wolf's April 23, 2007, arrest. Finally, concerning Agents Walters and Martell, High Wolf notes that both agents' Applications for a Rosebud Sioux Tribal (RST) Commission failed to signify whether their commissions were permanent or temporary. For these reasons, High Wolf argues that Officer Waln, Sergeant Long, Agent Walters, and Agent Martell acted without the legal authority of a tribal law enforcement officer.

Even assuming that Officer Waln, Sergeant Long, Agent Walters, and Agent Martell were not properly commissioned on April 23, April 25, April 26,

11

and November 17, 2007, and therefore were not acting in compliance with tribal law, the court finds that the tribal law violation did not affect the constitutionality of the stop and search of High Wolf's vehicle and person, or his subsequent statements. In federal prosecutions, challenges to the legality of a search and seizure are properly evaluated under federal Fourth Amendment standards. United States v. Hornbeck, 118 F.3d 615, 617 (8th Cir. 1997). In Hornbeck, the court found that "[a] court must examine the legality of a search by state officers as if made by federal officers." Id. This holding applies equally to tribal officers. Id. See also United States v. Male Juvenile, 280 F.3d 1008, 1023 (9th Cir. 2002) ("[W]e reject the contention that tribal law should govern the admissibility of statements in federal court. Federal law governs federal proceedings."). Further, in the Eighth Circuit, Fourth Amendment analysis does not require reference to an arrest's legality under state law. United States v. Bell, 54 F.3d 502, 504 (8th Cir. 1995); see also Virginia v. Moore, No. 06-1082, slip. op. (U.S. Apr. 23, 2008) (holding that the Fourth Amendment was not violated when state officers made an arrest in violation of state law). Magistrate Judge Moreno specifically considered Hornbeck and Moore to conclude that the stop, arrest, searches, and seizures in this case were reasonable, regardless of whether the officers were commissioned as tribal officers at the time.

High Wolf argues that the above cited authority is distinguishable from this case because here, the tribal officers' actual authority to act as officers is in dispute.  In Abbott v. City of Crocker, Missouri, 30 F.3d 994, 997 (8th Cir. 1994), an officer effected an arrest and subsequent search outside of city limits, despite his lack of authority to do so under Missouri law.  The court found that the arrest and subsequent search did not violate the Fourth Amendment:

> "[T]he question here is not whether the search was authorized by state law.  The question is rather whether the search was reasonable under the Fourth Amendment.  Just as a search authorized by state law may be an unreasonable one under that amendment, *so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.*

Id. at 997 (emphasis in original).

The court finds the logic in Abbott to apply to this case.  Like in Abbott, the tribal officers' actions are in question because of the law of their sovereign.  Namely, RST has the power to authorize tribal officers to enforce the law on its reservation.  RST has the corresponding power to limit its police force to only those who have received a tribal commission card, or to limit the terms of its tribal officers, just as the state of Missouri can limit the jurisdictional boundaries of where its officers can make arrests.  But these limitations of power are not constitutionally required.  The tribe's failure to renew the tribal commissions, although it may result in activity violative of tribal law by the

13

non-commissioned officers, does not render the conduct of those officers "unreasonable" and thus unconstitutional under the Fourth Amendment.[3] Accordingly, the court finds that even assuming the officers and agents did not possess valid RST commission cards when they stopped and searched High Wolf's vehicle and person, their non-commissioned status is irrelevant to the Fourth and Fifth Amendment inquires in this case. Magistrate Judge Moreno properly found the evidence and statements in dispute admissible.

Based on the foregoing, it is hereby

ORDERED that the court adopts the Report and Recommendation of the Magistrate Judge (Dockets 99, 100, 102, 103) as supplemented herein, and defendant's motions to suppress (Dockets 34 and 74) are denied.

Dated August 11, 2008.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

---

[3] In Abbott, the court noted that in certain situations whether an officer complied with state law might be relevant, though not dispositive, in deciding whether police conduct was reasonable under the Fourth Amendment. 30 F.3d at 998. See also United States v. Baker, 16 F.3d 854, 856 (8th Cir. 1994). But the court finds that whether the officers in this case technically complied with the RST ordinance is not relevant to this court's constitutional determination.